Mark R. Thierman (Nev. Bar No. 8285)
Joshua D. Buck (Nev. Bar No. 12187)
Leah L. Jones (Nev. Bar No. 13161)
THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GLENN DEWEESE and JOSHUA HOLTOM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ITS NATIONAL, LLC; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 3:18-cv-00375-MMD-WGC<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiffs GLENN DEWEESE and JOSHUA HOLTOM, on behalf of themselves and all others similarly situated ("Plaintiffs"), on behalf of themselves and all others similarly situated, submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiffs and Defendant ITS NATIONAL, LLC ("Defendant"), collectively referred to throughout this Motion as "the Parties," have reached an overall agreement to settle this action in its entirety. Pursuant to Rule 23(e) of the Federal Rules of Civil ("FRCP") the Parties seek this Court's preliminary approval of the Parties' "Joint Stipulation of Settlement and Release between Plaintiffs and Defendant" ("Settlement") (A copy of which is submitted for this Court's review concurrently herewith as Exhibit 1 to the Declaration of Joshua D. Buck ("Buck Dec.") at ¶ 4).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND OVERVIEW OF SETTLEMENT TERMS

The Parties have come to a global settlement in this action for a total settlement amount of $675,000.00 to be paid to class members on a claims made basis. All of the terms of the Settlement[1], have been agreed upon and as follows:

- $405,000.00 in estimated settlement funds to the Class[2];
- $20,000.00 in Claims Administrator's reasonable fees and expenses approved by the Court;
- $30,000 total Enhancement Award to Plaintiffs and Class Representatives, Glenn Deweese and Joshua Holtom ($15,000 each) for their service as Class Representatives;
- $215,000.00 in attorneys' fees (approximately 32% of the maximum settlement amount); and
- $5,000 in costs.

*See* Exhibit A, hereinafter "Settlement Agreement" or 'Settlement' at ¶¶ 13.b, 13.g; 15; Buck Dec. at ¶ 9.

### II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs Glen Deweese and Joshua Holtom filed this Action in Nevada state court for unpaid wages under Nevada state and federal law on June 6, 2018. Plaintiffs alleged that they were misclassified as exempt from overtime compensation and, as a result, asserted the following three (3) causes of action: (1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207, (2) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018, and (3) Failure to Timely Pay All

---

[1] This Motion incorporates by reference the definitions in the Joint Stipulation of Settlement and Release between Plaintiffs and Defendant and terms used herein shall have the same meaning as set forth in the Settlement.

[2] The Net Distribution Amount is subject to change and may increase or decrease depending on the actual Administration Costs, and any Incentive Awards and Fee and Expense Award approved by the Court.
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

Wages Due and Owing in Violation of NRS 608.140 and 608.020-050.  *See* ECF No. 1, generally.[3]

On August 8, 2018, Defendant ITS National, LLC, removed this Action from Nevada state court to federal district court, answered Plaintiffs' Complaint, and filed a Counterclaim against Plaintiffs Deweese and Holtom.  Defendant asserted five (5) causes of action in its Counterclaim, relating to a non-competition/non-solicitation agreement with Plaintiffs: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Unjust Enrichment; (4) Declaratory Relief; and (5) Injunctive Relief.  *See* ECF No. 10-1.

The Parties have engaged in extensive settlement discussions regarding their respective positions and exchange of the information and data needed to properly evaluate the merits of the claims alleged. Among other things, Defendant's counsel provided Class Counsel with W-2 earnings for Plaintiffs and all person who had opted-in to the Action, as well as the total number of putative class members and dates of employment.  After extensive discussions regarding the strengths of their respective positions, the Parties reached a proposed class action settlement and settlement of the Counterclaims through arms-length direct negotiations following a full day settlement conference with Federal Magistrate Judge William G. Cobb.  *See* Buck Dec. at 7; Settlement at ¶ 4.

For the purpose of settling this case, the Parties stipulate and agree to the certification of the following Settlement Class: "All Inside Sales Positions (Account Executives, Account Managers, and other similar job positions) and Carrier Specialists (and other similar job positions) who were employed by Defendant ITS National, LLC, at any time from June 6, 2015 through the date of preliminary approval.  *See* Settlement at ¶ 6.

The Parties have also agreed, that in exchange for the Enhancement Award, both Plaintiffs, Mr. Deweese and Mr. Holtom will enter into an Individual Settlement Agreement and Release ("Individual Agreement"), Stipulated Injunction, and a one-time payment of $5,000.00

---

[3] Prior to filing the complaint in this action, Plaintiffs mailed Defendant a demand and attached a draft complaint setting forth their allegations.  *See* Buck Dec. at ¶ 7.

1 to Defendant that will resolve all of named-Plaintiffs' potential claims against Defendant and all
2 of Defendant's claims against the named-Plaintiffs. *See* Buck Dec. at 12; Settlement at ¶ 7.

## II.  SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class, releases only those claims that reasonably arise or could have arisen out of the facts alleged in the Complaint, and sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement. *See* Settlement at ¶ 13.a.

### A.  **The Recovery.**

- $405,000.00 in estimated settlement funds to the Class;
- $20,000.00 in Claims Administrator's reasonable fees and expenses approved by the Court;
- $30,000 total Enhancement Award to Plaintiffs and Class Representatives, Glenn Deweese and Joshua Holtom ($15,000 each) for their service as Class Representatives;
- $215,000.00 in attorneys' fees (approximately 32% of the maximum settlement amount); and
- $5,000 in costs.

*See* Settlement at ¶¶ 13.b, 13.g; 15; Buck Dec. at ¶ 9. Settlement Awards for each Class Member who participates in the Settlement by submitting a timely and valid Claim Form will be allocated from the Net Settlement Amount and paid as follows: one-third (1/3) will be allocated to alleged unpaid wages for which IRS Forms W-2 will issue; one-third (1/3) will be allocated to alleged unpaid penalties for which IRS Forms 1099-MISC will issue; and one-third (1/3) will be allocated to alleged unpaid interest for which IRS Forms 1099-MISC will issue. *Id.* at ¶ 13.f. Each Class Member who receives a Settlement Award shall pay his/her share of payroll taxes from the one-third (1/3) of the Settlement Award allocated to alleged unpaid wages. *Idib.* Accordingly, each Settlement Award will be reduced by applicable payroll tax withholdings and deductions. Defendant shall pay the normal employer's portion of payroll taxes separately, as calculated by the Claims Administrator. *Idib.* Named Plaintiffs (Glen Deweese and Joshua Holtom) are not

required to submit a Claim Form, but are required to execute this Stipulation of Settlement; said Plaintiffs will be issued their Settlement Awards at the time the Claims Administrator issues Settlement Awards to all other Class Members. *Idib.*

The remainder of the maximum settlement amount (the amount remaining after deduction of the settlement administration costs, Enhancement Awards, Attorneys Fees, Costs, and payroll taxes) ("net settlement amount") will paid to Class Members who submit a timely Claim Form based on the formula established in Paragraph 13 (d) of the Settlement. *Id.* at ¶¶ 13.d, h; 18. Class Members who do not submit a Claim Form will not be paid a Settlement Award. *Id.* at ¶ 18. Any sums not payable from the Net Settlement Amount shall not be payable by Defendant. *Id.* at ¶ 13.d.

The Settlement represents a significant recovery on behalf of the Class given the risks associated with this case. *See* Buck Dec. at ¶¶ 6, 10. Plaintiffs alleged they were misclassified as overtime exempt under both Nevada and federal law. *See* ECF No. 1. The $675,000.00 recovery for all class members is significant given the disparate facts and uncertain legal requirements at issue with regard to defenses asserted by Defendant, including whether employees qualify as exempt from overtime, among other defenses. *See* Buck Dec. at 6.

**B.     The Release.**

Defendant denies liability under any of Plaintiffs' claims. *See* Settlement at ¶ 7. The Settlement provides that, in consideration for the Settlement, Settlement Class Members[4] who do not file valid requests for exclusion will release all wage and hour claims relating or arising out of the facts of Plaintiffs' complaint against Defendant pursuant to the terms of the Settlement.[5] *Id.* at ¶ 20.

---

[4] "Settlement Class" means all Inside Sales Positions (Account Executives, Account Managers, and other similar job positions) and Carrier Specialists (and other similar job positions) who were employed by Defendant ITS National, LLC, at any time from June 6, 2015 through the date of preliminary approval. *Settlement* at ¶ 1.y.

[5] ""Released Claims" means the claims to be released by the Settlement Class as fully set forth in Paragraph 21 of this Agreement. *Settlement* at ¶ 1.u.

C. **The Settlement Mechanism.**

The Parties have agreed to use a third-party Claims Administrator to administer the claims process. *Id.* at ¶¶ 1.c; 14. The Settlement provides for the Claims Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. *Id.* and ¶¶ 17-20. (A copy of the Notice to be approved by the Court and sent to class members is attached as Exhibit A to the Settlement. The Claim Form is attached as Exhibits B to the Settlement. The Exclusion form is attached as Exhibit C to the Settlement. *See* Buck Dec. at ¶ 4. Following mailing of the Notice, class members then have thirty (30) days to submit a claim form and participate in the Settlement, request to be excluded from the Settlement, or object to the Settlement. *Id.* ¶¶ 17.a.ii; 18-21.

The Settlement further provides that following the notice period the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement. *Id.* at ¶ 21. The Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known. *Id.* At the fairness hearing, the Parties will address any issues raised by class members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

**III. THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT.**

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) *(*"Manual for Complex Litigation"*)* (summarizing "preliminary fairness review"). Stage two is the fairness hearing, set for a time after notice has

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id.* at 659 (citations omitted).

Because this is the first stage of the Court's evaluation of the Settlement, Plaintiffs submit that (A) the Class should be certified, (B) the Settlement should be preliminary deemed fair, reasonable, and adequate, and (C) notice should be sent out as set forth in the Settlement.

### A. The Settlement Class Should Be Certified.

To facilitate the proposed settlement, Plaintiffs respectfully request that the Court conditionally certify the following settlement Class pursuant to FRCP 23:

> All Inside Sales Positions (Account Executives, Account Managers, and other similar job positions) and Carrier Specialists (and other similar job positions) who were employed by Defendant ITS National, LLC, at any time from June 6, 2015 through the date of preliminary approval.

*See* Settlement at ¶ 1.y. The Parties agree that, for purposes of settlement, the criteria for certifying the Class under FRCP 23(a) and FRCP 23(b)(3) may be satisfied in this case, and the proposed Class should be certified for purposes of settlement. *See* Settlement at ¶ 6.

#### 1. All four criteria of FRCP 23(a) are met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the settlement Class consists of approximately one hundred thirty-eight (138) individuals. *See* Buck Dec. at ¶ 6. Plainly, the numerosity criterion is satisfied.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial

issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Under state and federal law, all non-exempt employees are entitled to compensation for all hours worked over forty (40) hours in a workweek at an overtime premium. All non-exempt employees who involuntarily leave their employment are also entitled to be paid all their wages due and owing at the time their employment ends under Nevada law. Given this legal foundation, Plaintiffs and class members assert common factual and legal questions, which include, whether class members were compensated for all hours they worked at the appropriate legal rate pursuant to state and federal law and whether class members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607 (C.D. Cal. 2005). Based on these common issues, this criterion is met. For purposes of approving this Settlement, Defendant does not oppose Plaintiffs' assertion that sufficient commonality exists.

***FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.*** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.* Here, the claims or defenses of the representative parties are typical of the claims or defenses of the class because all Class Members were classified as exempt from overtime according to Defendants' common plan, policy, and practices described in Plaintiffs' Complaint. Plaintiffs assert the same wage and hour violations as all other members of the class. Thus, their claims are typical to those of the Class. For purposes of approving this Settlement, Defendant does not oppose Plaintiffs' assertion that sufficient typicality exists.

***FRCP 23(a)(4): The representative parties will fairly and adequately protect the interests of the class.*** Courts have interpreted this requirement as posing two questions: (1)

whether either the named plaintiffs or their counsel has any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases).  Here, the named Plaintiffs share with absent class members an interest in recovering compensation that Defendant allegedly denied them due to misclassification of their exempt/non-exempt status.  Plaintiffs' counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions.  *See* Buck Dec., at ¶¶ 5, 6-7, 11, 13.

### 2. The criteria of FRCP 23(b)(3) are met.

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3).

***The predominance requirement is met***.  The predominance inquiry "focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from Defendants' alleged unlawful and uniform policies strongly supports a finding that the predominance requirement is satisfied.  *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009). Accordingly, Plaintiffs argue that common issues of law and fact predominate, and Defendant does not oppose this argument for purposes of settlement approval.

***The superiority requirement is met.***  Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute

resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614. Plaintiffs allege that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, the superiority requirement is "easily satisfied." *Id.* Because the sums per employee are relatively small, the Plaintiffs' litigation costs high, and Defendant's conduct uniform, a class action is superior to filing nearly two-hundred individual actions concerning the same facts and legal issues. Defendant does not oppose such a finding for purposes of settlement approval.

### B.   The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. *Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's]

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321. Plaintiffs aver that all inquiries are preliminarily satisfied as follows:

### 1. The Settlement Is Fair.

**Fairness of distribution among class members.** The proposed settlement is fair in that class members' benefits are determined by a pro rata share of the total net settlement value. *See* Settlement at ¶ 13.d. Furthermore, the proposed settlement would release only participating class members' wage and hour claims, not all potential employment claims, in exchange for the financial benefits they receive.

**Fairness of proposed attorneys' fees.** The allocation of total settlement funds between class members and the attorneys is also fair, in that the settlement agreement provides for Plaintiffs' counsel to seek approximately 32% of the maximum settlement amount in fees. *Id.* at ¶ 15. The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Further, the requests are in line with other attorneys' fees awards for wage and hour class actions, particularly where a significant portion of the class members will be receiving substantial claim payment amounts of several thousand dollars or more. Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally

among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Courts now routinely uses the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

Class counsels' application for approximately 32% of the Settlement Funds is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a

disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6. Also, Defendant does not oppose Plaintiffs request for fees up to a maximum amount of $215,000.00. *See* Settlement at ¶ 15. Accordingly, the attorneys' fees sought in this case are fair and reasonable.

**Fairness of proposed "enhancement" awards for the named Plaintiffs**. The principle of fairness is also well served by the enhancement payments proposed for the named Plaintiffs. Plaintiffs provided invaluable assistance to Plaintiffs' counsel in explaining Defendant's alleged compensation policies and procedures and in providing information to assist in the settlement negotiations. Plaintiffs also participated in extensive discovery proceedings, related to the Settlement Conference with Magistrate Cobb. Further, Plaintiffs incurred personal risk in bringing this lawsuit on behalf of the other persons in the class. *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees). Indeed, Defendant filed counterclaims and an injunction against Plaintiffs. Moreover, Plaintiffs could have been held liable for Defendant's costs if they were ultimately unsuccessful in resolving the case and their potential employment opportunities could (and can still be) impacted because of their public participation in this lawsuit. Such service payments are recognized as serving an important function in promoting class action settlements. In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Accordingly, the proposed enhancements are fair.[6]

### 2. The Settlement Is Reasonable.

At $675,000.00 the overall, the proposed settlement is reasonable. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, the class size in this case is relatively small in comparison, and Class

---

[6] Plaintiffs will submit declarations in support of their Enhancement Awards at the final approval state.

Members are eligible for substantial individual financial benefits. These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including the possibility of additional appellate proceedings. Of particular relevance to the reasonableness of the proposed settlement are the numerous potentially dispositive defenses advanced by Defendants, including whether employees qualify for an exemption under the FLSA. Given the significant legal and factual uncertainty relating to these defenses, the $675,000.00 settlement represents a reasonable recovery based on the alleged violations. *See* Buck Dec. at ¶¶ 6-7, 13.

Furthermore, while Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months or years. *Id.* Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted an arm's-length direct negotiation process, which continued into all details of the settlement agreement and ancillary documents. *Id. see also,* Settlement at ¶ 10.

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625. The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971). The policy that favors settlement of class actions and other complex cases applies with particular force here. Employment cases, and specifically wage and hour cases, are expensive and time-consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement. Inevitably, the certification process alone would add time and expense to the litigation process. The settlement, on the other hand, provides class members

substantial, prompt and efficient relief. The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

In sum, the resulting settlement is, in light of all applicable factors, reasonable, and warrants notification of its terms to members of the potential class for their consideration and response.

### 3. The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the settlement is reasonable, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.... "*Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

Thus, considering the present value of the settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the class were likely to achieve ranged from negligible to zero. Consequently, the $675,000.00 settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* §

21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

### C. The Notice Adequately Informs Class Members of the Settlement.

The Notice explains the claim process; how to request to be excluded or object; and the consequences of the action the class member takes (filing a claim, doing nothing, opting out, or objecting), in terms of both financial benefit and release of state claims. *See* Notice attached as Exhibit A to the Settlement. The Notice advises class members about the final approval hearing, their rights with respect to that hearing, and how to get more information. *Id.* Likewise, the Claim Form and Exclusion form are simple and straightforward. *See* Claim and Exclusion forms attached as Exhibit B and C, respectively to the Settlement. The 30-day time frame for returning a claim is reasonable, allowing class members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take. Accordingly, in addition to approving the Settlement agreement as a whole, Plaintiffs respectfully ask that the Court approve the Notice and other ancillary forms in substantially the format presented with the Settlement.

### IV. CONCLUSION

Based on the information and reasons provided above, Plaintiffs respectfully request that the Court enter the proposed order granting preliminary approval of the class action settlement that is attached to the Settlement as Exhibit D.

Date:  March 6, 2019                    THIERMAN BUCK LLP

*/s/Joshua Buck*
Mark R. Thierman (Nev. Bar No. 8285)
Joshua D. Buck (Nev. Bar No. 12187)
Leah L. Jones (Nev. Bar No. 13161)

*Counsel for Plaintiffs*