Mark R. Thierman (NSB No. 8285)
Joshua D. Buck (NSB No. 12187)
Leah L. Jones (NSB No. 13161)
THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

*Attorneys for Plaintiffs*

Robert A. Dotson (NSB No. 5285)
Jill I. Greiner (NSB No. 4276)
DOTSON LAW
5355 Reno Corporate Drive, Ste 100
Reno, Nevada 89511
Telephone: (775) 501-9400
rdotson@dotsonlaw.legal
jgreiner@dotsonlaw.legal

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| GLENN DEWEESE and JOSHUA HOLTON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ITS NATIONAL, LLC; and DOES 1 through 50, inclusive, <br> Defendants. | Case No.: 3:18-cv-00375-MMD-WGC <br><br> **STIPULATION FOR INJUNCTION** |

Defendant, ITS NATIONAL, LLC ("ITS"), by and through its counsel, Dotson Law, and

Plaintiffs, GLENN DEWEESE and JOSHUA HOLTOM (hereinafter collectively "Plaintiffs"), by

and through their counsel, Thierman Buck LLP, hereby stipulate to an Injunction as described herein.

The parties specifically stipulate to in favor of Defendant, enjoining Plaintiffs from 1) breaching or

utilizing information in violation of the Non-Competition/Non-Solicitation Agreements executed by

Plaintiffs with ITS, 2) breaching the Confidentiality Agreements executed by Plaintiffs in favor of

ITS, and 3) revealing or utilizing the proprietary information and trade secrets of ITS which

Plaintiffs promised to protect and the use of which is a violation of Nevada law,[1] and 4) utilizing the

confidential and proprietary information, including, but not limited to, the customer information and

customer lists or any associated data, contacting any persons or perspective customers of ITS,

including, but not limited to, any customer lists, customer information, or data which is known to

---

[1] *See*, Uniform Trade Secrets Act, NRS 600A.010-.090.

Plaintiffs as a result of their previous employment with ITS, and contacting or soliciting the customers of ITS. Except as otherwise expressly modified herein, the terms of the Agreements shall govern. Plaintiffs may petition the Court to abolish this Injunction for any reason, including a change of law that prohibits the restrictions set forth in the Agreements.

As an accommodation to Plaintiffs, and as part of the consideration of the settlement of this dispute, ITS agrees to waive the enforcement of the Non-Competition provisions against these Plaintiffs only insofar as Plaintiffs are allowed to conduct business and compete with ITS for small package shipments and international shipments. ITS does not waive and Plaintiffs agree to not compete with ITS with regard to truckload and less than truckload shipments originating or terminating within the United States. The waiver of enforcement of the Plaintiffs' obligations with regard to small package shipments will be honored by ITS locally in the Reno Sparks region, as well as nationally and internationally. ITS further agrees to waive the enforcement of the non-competition obligations with regard to the brokerage of all international freight. For avoidance of doubt, this waiver applies only to brokered loads which originate and terminate outside of the United States.

Plaintiffs were employees of ITS and during the course and as a condition and term of their employment with ITS, agreed to be bound by Non-Competition/Non-Solicitation Agreements which are attached hereto and incorporated herein.[2] During their employment with ITS and as a further condition and term of such employment, they also agreed to be bound by Confidentiality Agreements which are attached hereto and incorporated herein.[3]

Pursuant to the terms of the Non-Competition/Non-Solicitation Agreements and relevant to this injunction, Plaintiffs agreed that for a period of one year after the termination of their employment relationship with ITS, they would not start a Competitive Business or be employed by or in any way affiliated with a Competitive Business located within fifty miles of the city limits of Sparks. A Competitive Business is therein and for this injunction defined as "any business that involves brokered trucking services and that use independent truck owners and/or operators, as well as related products and services in the trucking business." For the purpose of this injunction and as

---

[2] Non-competition/Non-solicitation Agreements signed by Plaintiffs in October 2017 are attached as Exhibit 1 .
[3] Confidentiality Agreements executed by Plaintiffs are attached as Exhibit 2.

consideration for this settlement, the parties agree to limit the scope of the restriction, the prohibited business, to truckload and less than truckload services. Small package services will not be within the scope of this restriction or prohibited. The parties further agree to not restrict services where the load originates and terminates outside of the United States. These remaining restricted activities will be enjoined for one year following the termination of their employment relationship with ITS, and will therefore expire on May 17, 2019. Until that date the Plaintiffs agree to be enjoined from competition as herein described.

Pursuant to the terms of the Non-Competition/Non-Solicitation Agreements and relevant to this injunction, Plaintiffs further agreed that for a period of two years immediately following the termination or their employment relationship with ITS they would not provide similar services as described therein to any former customers or clients of ITS unless Plaintiffs did not instigate contact with and solicit the former customers or clients, and further that they would not instruct or aid others to solicit such former customers or clients. These restricted activities will be enjoined for two years following the termination of the employment relationship with ITS, and will therefore expire on May 17, 2020. Until that date, the Plaintiffs agree to be enjoined from solicitation of clients and customers of ITS as described in the Agreements and herein. Thus, ITS does not waive any of these restrictions as agreed to in the Non-Competition/Non-Solicitation Agreements.

Pursuant to the terms of the Non-Competition/Non-Solicitation Agreements and relevant to this injunction, Plaintiffs also agreed that for two years immediately following the termination or the employment relationship with ITS they would not hire any person or entity that served as a carrier of ITS during Plaintiffs' employment with ITS unless Plaintiffs did not instigate contact with and solicit the carrier, and further that they would not instruct or aid others to solicit such persons or entities. These restricted activities will be enjoined for two years following the termination of the employment relationship and will therefore expire on May 17, 2020. Until that date, the Plaintiffs agree to be enjoined from solicitation of persons or entities that served as carriers of ITS during their employment relationship with ITS as described in the Agreements and herein. Thus, ITS does not waive any of these restrictions as agreed to in the Non-Competition/Non-Solicitation Agreements.

3

Pursuant to the terms of the Non-Competition/Non-Solicitation Agreements and relevant to this injunction, Plaintiffs agreed that for two years immediately following the termination of the employment relationship with ITS they would not solicit, divert, to take away or attempt to take away any employee of ITS who was an employee of ITS during Plaintiffs' employment with ITS, and further that they would not instruct, aid or cause others to solicit such persons. These restricted activities will be enjoined for two years following the termination of the employment relationship and will therefore expire on May 17, 2020. Until that date, the Plaintiffs agree to be enjoined from the activities described herein and within the Non-Competition/Non-Solicitation Agreements attached hereto. Thus, ITS does not waive any of these restrictions as agreed to in the Non-Competition/Non-Solicitation Agreements.

Pursuant to the terms of the Confidentiality Agreements, the Non-Competition/Non-Solicitation Agreements and relevant to this injunction, Plaintiffs agreed that during their employment with ITS they had been given access to proprietary business information ("Confidential Information") belonging to ITS, and ITS has a protectable interest in that information. The Confidentiality Agreement defines Confidential Information as:

> "Confidential Information" shall mean any and all non-public knowledge, data or information of the Company, including but not limited to the Company's strategic plans, marketing research and information, business results and financial information, ideas, processes, formulas, data, programs, know-how, improvements, discoveries, developments, designs and techniques; information regarding business plans, budgets, unpublished financial statements, licenses, prices and costs; information regarding customers, including, but not limited to all customer lists, identifying information, agreements, and rates; information regarding vendors, including, but not limited to all vendor lists, identifying information, agreements and rates; information regarding the skills and compensation of employees of the Company; and any other confidential, proprietary and trade secret knowledge, data or information, or information that, due to its character and nature, a reasonable person under like circumstances would treat as confidential, in whatever form or medium, produced by or for the Company.

Plaintiffs further agreed that they had a duty to maintain that Confidential Information and not disclose it to any unauthorized recipient during the term of employment or anytime thereafter. Plaintiffs also agreed during their employment with ITS and thereafter to not appropriate, use or make use of any Confidential Information in connection with business activity. Plaintiffs further acknowledge that they have independent legal obligations to maintain trade secret information of ITS

4

pursuant to the Uniform Trade Secrets Act, NRS 600A.010-.090. Therefore, Plaintiffs agree to be enjoined from disclosing, appropriating, or using any Confidential Information or trade secret information held by ITS which they gained access to during their employment relationship with ITS, and ITS does not waive any of these restrictions as agreed to in the Confidentiality Agreements and the Non-Competition/Non-Solicitation Agreements. This injunction shall be permanent so long as said information is maintained as confidential.

This terms and obligations of this Stipulation will continue until otherwise modified pursuant to stipulation or Order of the Court, or the expiration of the obligations as set forth herein.

DATED this 7th day of March, 2019.

THIERMAN BUCK LLP

/s/
MARK R. THIERMAN
Nevada State Bar No. 8285
JOSHUA D. BUCK
Nevada State Bar No. 12187
LEAH L. JONES
Nevada State Bar No. 13161
7287 Lakeside Drive
Reno, Nevada 89511
(775) 284-1500
*Attorneys for Plaintiffs*

DATED this 5 day of March, 2019.

DOTSON LAW

/s/
ROBERT A. DOTSON
Nevada State Bar No. 5285
JILL I. GREINER
Nevada State Bar No. 4276
One East First Street
City Hall Tower, 16th Floor
Reno, Nevada 89501
(775) 501-9400
*Attorneys for Defendant*

IT IS SO ORDERED.

DATED this 19th day of March, 2019.

_____
**UNITED STATES ~~MAGISTRATE~~ JUDGE**

5

# INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---------|-------------|-------|
| 1 | Non-competition/Non-solicitation Agreements signed by Plaintiffs | 14 |
| 2 | Confidentiality Agreements executed by Plaintiffs | 5 |

# EXHIBIT 1

Non-competition/Non-solicitation Agreements signed by Plaintiffs

# EXHIBIT 1

Non-competition/Non-solicitation Agreements signed by Plaintiffs

## NON-COMPETITION/NON-SOLICITATION AGREEMENT

This Agreement is made and entered into on _October 13 ᵗʰ_____, 2017, by and between ITS National, LLC ("ITS National") and <u>Glenn Deweese</u> ("Employee").

1.     **NATURE OF EMPLOYMENT.**   Employee understands and agrees that Employee's employment is, and will continue to be, at-will, terminable at any time with or without cause by either party. This Agreement does not create an obligation of continued employment on the part of the Employee or ITS National, nor shall it interfere with or restrain ITS National's right to terminate Employee's employment at any time for any reason whatsoever, with or without cause, and with or without advance notice. Employee and ITS National understand, agree and acknowledge that compliance with this Agreement is a term of Employee's employment and the terms are therefore supported by the valuable consideration of that employment. It is further agreed and acknowledged that the Employee's job title at ITS National is Sales Executive, with duties that include but are not limited to the following: This position is responsible for developing and maintaining client relationships, offering custom, sometimes out-of-the-box transportation solutions that truly satisfy our customer's needs, while delivering outstanding service. This position is also responsible for measured sales growth.

2.     **ITS NATIONAL'S PROTECTABLE INTEREST.**   ITS National is in the business of providing brokered truck loads for independent truck owners and/or operators and related products and services. Employee acknowledges that: (a) the identity and particular needs of ITS National's clients are not generally known to the public, the transportation and logistics industry or its competitors; (b) ITS National has a proprietary interest in its own business and client information, including client names and lists of clients, financial and proprietary information of both ITS National and its clients, and information regarding ITS National's and its clients' methods of sales, marketing, pricing, costs, good will and reputation, and trade secrets (individually and collectively "Confidential Information"); (c) Employee will have and has had access to some or all of the foregoing Confidential Information in the course of the employment relationship; and, (d) by signing this Agreement Employee acknowledges his understanding of his obligations and that Employee will keep all Confidential Information of ITS National in the strictest confidence and will take all necessary precautions against disclosure of such information to third parties, during and after employment. Confidential Information does not include: information or knowledge that may now be in or subsequently may come in the public domain other than by way

1

**ITS 0001**

of unauthorized disclosure by Employee, or information or knowledge which Employee is required to disclose by order of a governmental agency or court after timely notice has been provided to ITS National of such order or request. Employee agrees not to retain copies, duplicates, reproductions or excerpts of any Confidential Information, except to the extent the Confidential Information relates to Employee's salary, benefits and/or compensation from ITS National.

3. **NON-COMPETITION OBLIGATIONS.** Employee agrees that during his or her term of employment with ITS National and for a period of one year immediately following termination of the employment relationship, Employee will not start a competitive business within the city limits of and within a radius of fifty miles of the city limits of Sparks, Nevada, or within the city limits of and within a radius of fifty miles of any city in which ITS National maintains an office which will offer for sale, or which solicits the sale of services and/or products similar to those provided by ITS National, as described herein or purposes of this Agreement. A "Competitive Business" is defined as any business that involves brokered trucking services and that use independent truck owners and/or operators, as well as related products and services in the trucking business. Employee also agrees that during the term of employment with ITS National and for a period of one year immediately following termination of the employment relationship, Employee will not be employed by, in anyway affiliated with, instruct, aid, consult, or in any way be affiliated with any Competitive Business in his capacity as [job title] with the above-described duties within a radius of fifty miles of any geographic area or market serviced by ITS National at the time of the termination of the employment relationship. Employee further agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing. Employee's non-competition obligations described herein do not apply if employee is terminated due to a reduction in force, reorganization, or similar restructuring. In such cases where the employee is terminated due to a reduction in force, reorganization, or similar restructuring, the above-described non-competition covenant is only enforceable during the time in which ITS National is paying employee's salary, benefits, or equivalent compensation, including severance pay.

4. **CLIENT NON-SOLICITATION AND SERVICE OBLIGATIONS.** Employee agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not provide similar services as described herein to a former customer or client of ITS National, unless

2

Employee did not instigate contact with and solicit the former customer or client, the customer or client voluntarily chose to leave and seek services from the Employee, **and** Employee is otherwise complying with the limitations in the covenant as to time, geographical area and scope of activity to be restrained. Employee further agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not solicit or attempt to take away any person or entity that was a former customer or client or prospective client of ITS National for purposes of providing similar services described herein. A prospective client includes a person or entity which had been presented with a proposal for ITS National services or products by any employee or agent of ITS National within 60 days before the termination of Employee from ITS National. Employee further agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing.

     5.     **CARRIER NON-SOLICITATION AND SERVICE OBLIGATIONS.** Employee agrees that a carrier is a customer and client of ITS National that provides transportation services to ITS National. Employee specifically agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not hire any entity that served as a carrier of ITS National during Employee's employment at ITS National unless Employee did not instigate contact with and solicit the carrier; the carrier voluntarily chose to leave and seek employment with the Employee, **and** Employee is otherwise complying with the limitations in the covenant as to time, geographical area and scope of activity to be restrained. Employee also agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not solicit or attempt to take away any person or entity that was a former, current or prospective carrier of ITS National for purposes of providing similar services described herein. Employee further agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing.

     6.     **EMPLOYEE NON-SOLICITATION OBLIGATIONS.** Employee agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not alone or through another business or employer solicit, divert, take away, or attempt to take away, any employee of ITS

**ITS 0003**

National who was an employee of ITS National during Employee's employment at ITS National. Employee also agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing.

7.    **SCOPE AND DURATION OF AGREEMENT.** This Agreement is intended to provide limited and reasonable restrictions on Employee's conduct during and after employment as a [job title] at ITS National, with a scope of the city limits of and within a radius of fifty miles of the city limits of Sparks, Nevada, and within the city limits of and within a radius of fifty miles of any city in which ITS National maintains an office, regardless of where the customer/clients are located. The duration of this Agreement is for a two-year period from the date of Employee's termination from ITS National.

8.    **TRANSFERABILITY / SUCCESSORS AND ASSIGNS.** Employee acknowledges that this Agreement and all of the rights of ITS National thereunder shall inure to the benefit of ITS National and any successor entity, and that Employee has received valuable consideration, including additional compensation in the amount of $200, employment as [job title] at ITS National, and the opportunity to modify the terms of this Agreement, in exchange for the understanding that the rights of ITS National may be assigned to a third party that may not be a party to this Agreement or affiliated with ITS National at the time of execution of this Agreement.

9.    **ENFORCEMENT.**

      a.    **Limitations.** ITS National agrees that it will only seek enforcement of the obligations of this Agreement in cases of termination of the Employee for "cause" and under circumstances where, if for any reason, Employee terminates the employment relationship. Moreover, as described above within Section 3, if the termination of the employment of Employee is the result of a reduction in force, reorganization, or similar restructuring of ITS National, the noncompetition covenant is only enforceable during the period in which ITS is paying employee's salary, benefits, or equivalent compensation, including severance pay.

      "Cause" as utilized in the clause immediately above includes:

            1.    The Employee's willful breach of, or gross negligence or malfeasance in the performance of his or her duties hereunder;

            2.    Any material insubordination by the Employee with respect to carrying out the reasonable instructions of a supervisor or substantial and repeated

4

failure of the Employee to perform his or her duties as reasonably directed by a supervisor;

3. The indictment or conviction of the employee for the commission of a felony or any other crime involving moral turpitude or the commission of any other act or omission involving dishonesty, disloyalty, misrepresentation, or fraud upon or related to the Employee's employment with ITS National or any of its subsidiaries or parent companies, or any of the customers or suppliers of them;

4. Reporting to work under the influence of alcohol or marijuana, under the influence of illegal drugs or the repeated use of illegal drugs (whether or not in the work place) or other conduct that may cause ITS National, or its parent or any affiliate company to incur substantial public disgrace, disrepute, or significant commercial or reputational injury;

5. The Employee's breach of a fiduciary obligation to or improper disclosure of confidential information of ITS National or any parent or subsidiary company or any customer or supplier that has provided such information to ITS National in confidence;

6. The Employee's breach of the non-competition, confidentiality, or non-solicitation obligations of this Agreement;

7. Any act of willful misconduct by the Employee which

i. is intended to result in a substantial personal enrichment of the Employee at the expense of ITS National or any of its parent or subsidiary companies, or

ii. is reasonably expected or is reasonably likely to result in a significant commercial injury or reputational injury to ITS National, which is not cured to the satisfaction of ITS National.

b. **Reasonableness of Restrictions**. Employee acknowledges that compliance with all covenants and agreements set forth in this Agreement are reasonable and necessary to protect the legitimate business interests of ITS National, including ITS National's goodwill. Employee also acknowledges that the covenants herein are supported by valuable consideration, including but not limited to the benefit of employment with ITS National and the considerable compensation received due to that employment.

c. **Irreparable Harm**. Employee acknowledges that a breach of Employee's obligations under this Agreement may cause irreparable and continuing damage to ITS National for which there is no adequate remedy at law.

5

ITS 0005

**d.**     **Injunctive Relief.**  Employee agrees that if Employee breaches any provision in this Agreement, ITS National shall be entitled to seek a temporary restraining order and preliminary and permanent injunctive relief from any court of competent jurisdiction to restrain any violations of this Agreement.

**e.**     **Attorneys' Fees.**  The parties agree that the prevailing party's attorney's fees in any civil action between the parties regarding this Agreement shall be paid by the losing party.

**10.**     **MISCELLANEOUS.**

**a.**     **Survival and Severability.**  This Agreement shall survive Employee's termination from employment with ITS National, except if it is the result of a reduction of force, reorganization or similar restructuring of ITS National or similar restructuring of ITS National, in which case the noncompetition is only enforceable during the period in which ITS National is paying Employee's salary, benefits or equivalent compensation. If any provision of this Agreement is found to be unenforceable for any reason by a court of competent jurisdiction, the remaining provisions in the Agreement shall survive and remain valid and enforceable. Specifically, if the court of competent jurisdiction finds the covenant is supported by valuable consideration but contains limitations as to time, geographical area or scope of activity to be restrained that are not reasonable, impose a greater restraint than is necessary for the protection of ITS National, the court shall revise the covenant to the extent necessary and enforce the covenant as revised and that such modification will be to allow enforcement to the maximum extent allowed by the then current laws of the state of Nevada.

**b.**     **Waiver.**  ITS National's failure to exercise or otherwise act with respect to any rights it has under this Agreement shall not be construed as a waiver, nor shall it prevent ITS National from later enforcing strict compliance with the Agreement.

**c.**     **Governing Law and Venue.**  This Agreement shall be interpreted, construed, and enforced in accordance with and governed by the laws of the State of Nevada. ITS National and Employee further agree that any action commenced interpreting and/or enforcing this Agreement and/or alleging and/or preventing its breach shall be brought in Washoe County, Nevada. ITS National and Employee waive any objection to personal jurisdiction and/or venue in Washoe County, Nevada.

6

d.  **Entire Agreement.** This Agreement contains all the understandings and agreements between the parties concerning Employee's non-competition with ITS National and non-solicitation of ITS National's clients and prospective clients and employees. All modifications or amendments to this Agreement must be in writing and signed by all parties. Employee acknowledges that no person who is an agent or Employee of ITS National may orally or by conduct modify, delete, vary, or contradict, the terms and conditions set forth herein.

e.  **Acknowledgement.** Employee represents that Employee has reviewed all aspects of this Agreement, that Employee has carefully read and fully understands all the provisions of this Agreement, that Employee knowingly and willingly intends to be legally bound by the same, that Employee was given the opportunity to consider the terms of this Agreement and discuss them with Employee's legal counsel.

Date:  _10/13/17_

Glenn Deweese

**EMPLOYEE**

Date:  _10.20.17_

**ITS NATIONAL, LLC**

By:

Its:  _Director, HR_

7

## NON-COMPETITION/NON-SOLICITATION AGREEMENT

This Agreement is made and entered into on  ⎿O⎿/ ⎿3⎿/ ⎿7⎿              , 2017, by and between ITS National, LLC ("ITS National") and <u>Joshua Holtom</u> ("Employee").

**1.     NATURE OF EMPLOYMENT.**   Employee understands and agrees that Employee's employment is, and will continue to be, at-will, terminable at any time with or without cause by either party.  This Agreement does not create an obligation of continued employment on the part of the Employee or ITS National, nor shall it interfere with or restrain ITS National's right to terminate Employee's employment at any time for any reason whatsoever, with or without cause, and with or without advance notice. Employee and ITS National understand, agree and acknowledge that compliance with this Agreement is a term of Employee's employment and the terms are therefore supported by the valuable consideration of that employment. It is further agreed and acknowledged that the Employee's job title at ITS National is Carrier Specialist, with duties that include but are not limited to the following: developing and maintaining client relationships, offering custom, sometimes out-of-the-box transportation solutions, that truly satisfy our customer's needs, while delivering outstanding service.

**2.     ITS NATIONAL'S PROTECTABLE INTEREST.**   ITS National is in the business of providing brokered truck loads for independent truck owners and/or operators and related products and services. Employee acknowledges that: (a) the identity and particular needs of ITS National's clients are not generally known to the public, the transportation and logistics industry or its competitors; (b) ITS National has a proprietary interest in its own business and client information, including client names and lists of clients, financial and proprietary information of both ITS National and its clients, and information regarding ITS National's and its clients' methods of sales, marketing, pricing, costs, good will and reputation, and trade secrets (individually and collectively "Confidential Information"); (c) Employee will have and has had access to some or all of the foregoing Confidential Information in the course of the employment relationship; and, (d) by signing this Agreement Employee acknowledges his understanding of his obligations and that Employee will keep all Confidential Information of ITS National in the strictest confidence and will take all necessary precautions against disclosure of such information to third parties, during and after employment. Confidential Information does not include: information or knowledge that may now be in or subsequently may come in the public domain other than by way of unauthorized disclosure by Employee, or information or knowledge which Employee is required

1

ITS 0008

to disclose by order of a governmental agency or court after timely notice has been provided to ITS National of such order or request. Employee agrees not to retain copies, duplicates, reproductions or excerpts of any Confidential Information, except to the extent the Confidential Information relates to Employee's salary, benefits and/or compensation from ITS National.

3.    **NON-COMPETITION OBLIGATIONS.** Employee agrees that during his or her term of employment with ITS National and for a period of one year immediately following termination of the employment relationship, Employee will not start a competitive business within the city limits of and within a radius of fifty miles of the city limits of Sparks, Nevada, or within the city limits of and within a radius of fifty miles of any city in which ITS National maintains an office which will offer for sale, or which solicits the sale of services and/or products similar to those provided by ITS National, as described herein or purposes of this Agreement. A "Competitive Business" is defined as any business that involves brokered trucking services and that use independent truck owners and/or operators, as well as related products and services in the trucking business. Employee also agrees that during the term of employment with ITS National and for a period of one year immediately following termination of the employment relationship, Employee will not be employed by, in anyway affiliated with, instruct, aid, consult, or in any way be affiliated with any Competitive Business in his capacity as Carrier Specialist with the above-described duties within a radius of fifty miles of any geographic area or market serviced by ITS National at the time of the termination of the employment relationship. Employee further agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing. Employee's non-competition obligations described herein do not apply if employee is terminated due to a reduction in force, reorganization, or similar restructuring. In such cases where the employee is terminated due to a reduction in force, reorganization, or similar restructuring, the above-described non-competition covenant is only enforceable during the time in which ITS National is paying employee's salary, benefits, or equivalent compensation, including severance pay.

4.    **CLIENT NON-SOLICITATION AND SERVICE OBLIGATIONS.** Employee agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not provide similar services as described herein to a former customer or client of ITS National,    unless Employee did not instigate contact with and solicit the former customer or client, the customer or

2

client voluntarily chose to leave and seek services from the Employee, **and** Employee is otherwise complying with the limitations in the covenant as to time, geographical area and scope of activity to be restrained. Employee further agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not solicit or attempt to take away any person or entity that was a former customer or client or prospective client of ITS National for purposes of providing similar services described herein. A prospective client includes a person or entity which had been presented with a proposal for ITS National services or products by any employee or agent of ITS National within 60 days before the termination of Employee from ITS National. Employee further agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing.

5.    **CARRIER NON-SOLICITATION AND SERVICE OBLIGATIONS.** Employee agrees that a carrier is a customer and client of ITS National that provides transportation services to ITS National. Employee specifically agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not hire any entity that served as a carrier of ITS National during Employee's employment at ITS National unless Employee did not instigate contact with and solicit the carrier; the carrier voluntarily chose to leave and seek employment with the Employee, **and** Employee is otherwise complying with the limitations in the covenant as to time, geographical area and scope of activity to be restrained. Employee also agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not solicit or attempt to take away any person or entity that was a former, current or prospective carrier of ITS National for purposes of providing similar services described herein. Employee further agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing.

6.    **EMPLOYEE NON-SOLICITATION OBLIGATIONS.** Employee agrees that during the term of employment with ITS National and for a period of two years immediately following termination of the employment relationship, Employee will not alone or through another business or employer solicit, divert, take away, or attempt to take away, any employee of ITS National who was an employee of ITS National during Employee's employment at ITS National.

3

ITS 0010

Employee also agrees to not instruct, aid, or cause any other person, firm, partnership, or corporation to do anything this Agreement prohibits Employee from doing.

7. **SCOPE AND DURATION OF AGREEMENT.** This Agreement is intended to provide limited and reasonable restrictions on Employee's conduct during and after employment as a [job title] at ITS National, with a scope of the city limits of and within a radius of fifty miles of the city limits of Sparks, Nevada, and within the city limits of and within a radius of fifty miles of any city in which ITS National maintains an office, regardless of where the customer/clients are located. The duration of this Agreement is for a two-year period from the date of Employee's termination from ITS National.

8. **TRANSFERABILITY / SUCCESSORS AND ASSIGNS.** Employee acknowledges that this Agreement and all of the rights of ITS National thereunder shall inure to the benefit of ITS National and any successor entity, and that Employee has received valuable consideration, including additional compensation in the amount of $200, employment as [job title] at ITS National, and the opportunity to modify the terms of this Agreement, in exchange for the understanding that the rights of ITS National may be assigned to a third party that may not be a party to this Agreement or affiliated with ITS National at the time of execution of this Agreement.

9. **ENFORCEMENT.**

   a. **Limitations.** ITS National agrees that it will only seek enforcement of the obligations of this Agreement in cases of termination of the Employee for "cause" and under circumstances where, if for any reason, Employee terminates the employment relationship. Moreover, as described above within Section 3, if the termination of the employment of Employee is the result of a reduction in force, reorganization, or similar restructuring of ITS National, the noncompetition covenant is only enforceable during the period in which ITS is paying employee's salary, benefits, or equivalent compensation, including severance pay.

   "Cause" as utilized in the clause immediately above includes:

   1. The Employee's willful breach of, or gross negligence or malfeasance in the performance of his or her duties hereunder;

   2. Any material insubordination by the Employee with respect to carrying out the reasonable instructions of a supervisor or substantial and repeated failure of the Employee to perform his or her duties as reasonably directed by a supervisor;

4

3.     The indictment or conviction of the employee for the commission of a felony or any other crime involving moral turpitude or the commission of any other act or omission involving dishonesty, disloyalty, misrepresentation, or fraud upon or related to the Employee's employment with ITS National or any of its subsidiaries or parent companies, or any of the customers or suppliers of them;

4.     Reporting to work under the influence of alcohol or marijuana, under the influence of illegal drugs or the repeated use of illegal drugs (whether or not in the work place) or other conduct that may cause ITS National, or its parent or any affiliate company to incur substantial public disgrace, disrepute, or significant commercial or reputational injury;

5.     The Employee's breach of a fiduciary obligation to or improper disclosure of confidential information of ITS National or any parent or subsidiary company or any customer or supplier that has provided such information to ITS National in confidence;

6.     The Employee's breach of the non-competition, confidentiality, or non-solicitation obligations of this Agreement;

7.     Any act of willful misconduct by the Employee which

i.     is intended to result in a substantial personal enrichment of the Employee at the expense of ITS National or any of its parent or subsidiary companies, or

ii.     is reasonably expected or is reasonably likely to result in a significant commercial injury or reputational injury to ITS National, which is not cured to the satisfaction of ITS National.

**b.**     **Reasonableness of Restrictions.**  Employee acknowledges that compliance with all covenants and agreements set forth in this Agreement are reasonable and necessary to protect the legitimate business interests of ITS National, including ITS National's goodwill. Employee also acknowledges that the covenants herein are supported by valuable consideration, including but not limited to the benefit of employment with ITS National and the considerable compensation received due to that employment.

**c.**     **Irreparable Harm.**  Employee acknowledges that a breach of Employee's obligations under this Agreement may cause irreparable and continuing damage to ITS National for which there is no adequate remedy at law.

5

**d.** **Injunctive Relief.** Employee agrees that if Employee breaches any provision in this Agreement, ITS National shall be entitled to seek a temporary restraining order and preliminary and permanent injunctive relief from any court of competent jurisdiction to restrain any violations of this Agreement.

**e.** **Attorneys' Fees.** The parties agree that the prevailing party's attorney's fees in any civil action between the parties regarding this Agreement shall be paid by the losing party.

**10.** **MISCELLANEOUS.**

**a.** **Survival and Severability.** This Agreement shall survive Employee's termination from employment with ITS National, except if it is the result of a reduction of force, reorganization or similar restructuring of ITS National or similar restructuring of ITS National, in which case the noncompetition is only enforceable during the period in which ITS National is paying Employee's salary, benefits or equivalent compensation. If any provision of this Agreement is found to be unenforceable for any reason by a court of competent jurisdiction, the remaining provisions in the Agreement shall survive and remain valid and enforceable. Specifically, if the court of competent jurisdiction finds the covenant is supported by valuable consideration but contains limitations as to time, geographical area or scope of activity to be restrained that are not reasonable, impose a greater restraint than is necessary for the protection of ITS National, the court shall revise the covenant to the extent necessary and enforce the covenant as revised and that such modification will be to allow enforcement to the maximum extent allowed by the then current laws of the state of Nevada.

**b.** **Waiver.** ITS National's failure to exercise or otherwise act with respect to any rights it has under this Agreement shall not be construed as a waiver, nor shall it prevent ITS National from later enforcing strict compliance with the Agreement.

**c.** **Governing Law and Venue.** This Agreement shall be interpreted, construed, and enforced in accordance with and governed by the laws of the State of Nevada. ITS National and Employee further agree that any action commenced interpreting and/or enforcing this Agreement and/or alleging and/or preventing its breach shall be brought in Washoe County, Nevada. ITS National and Employee waive any objection to personal jurisdiction and/or venue in Washoe County, Nevada.

6

ITS 0013

**d.** **Entire Agreement.** This Agreement contains all the understandings and agreements between the parties concerning Employee's non-competition with ITS National and non-solicitation of ITS National's clients and prospective clients and employees. All modifications or amendments to this Agreement must be in writing and signed by all parties. Employee acknowledges that no person who is an agent or Employee of ITS National may orally or by conduct modify, delete, vary, or contradict, the terms and conditions set forth herein.

**e.** **Acknowledgement.** Employee represents that Employee has reviewed all aspects of this Agreement, that Employee has carefully read and fully understands all the provisions of this Agreement, that Employee knowingly and willingly intends to be legally bound by the same, that Employee was given the opportunity to consider the terms of this Agreement and discuss them with Employee's legal counsel.

Date: 10/10/17

**EMPLOYEE**

Date: 10.20.17

**ITS NATIONAL, LLC**

By: S← Blackwell

Its: Director, HR

7

# EXHIBIT 2

Confidentiality Agreements executed by Plaintiffs

# EXHIBIT 2

Confidentiality Agreements executed by Plaintiffs

## CONFIDENTIALITY AGREEMENT

THIS CONFIDENTIALITY AGREEMENT ("Agreement"), dated April 6 th, 2015, is made by and between, ITS LOGISTICS, LLC, a Delaware Limited Liability Company (the "Company"), and _____ Glenn Deweese _____ (hereinafter referred to as the "EMPLOYEE").

## RECITALS

**WHEREAS,** the EMPLOYEE and the COMPANY agree and acknowledge that the EMPLOYEE has been given access to and in the future will be given continuing access to proprietary business information ("Confidential Information") belonging to the COMPANY and EMPLOYEE has a duty to maintain confidential that Confidential Information.

**WHEREAS,** the EMPLOYEE and the COMPANY agree and acknowledge that all Confidential Information pertaining to the business of the COMPANY is sensitive and absolutely confidential in nature and represents a valuable asset of the COMPANY in the nature of trade secrets and good will, which if disclosed or revealed in any manner or form would result in immediate irreparable harm and injury to the COMPANY.

**NOW THEREFORE,** in consideration of the promises contained herein, and other good and valuable consideration, it is hereby agreed between the Parties as follows:

1. **DEFINITIONS.**

    1.1 **"Confidential Information"** shall mean any and all non-public knowledge, data or information of the Company, including but not limited to the Company's strategic plans, marketing research and information, business results and financial information, ideas, processes, formulas, data, programs, know-how, improvements, discoveries, developments, designs and techniques; information regarding business plans, budgets, unpublished financial statements, licenses, prices and costs; information regarding customers, including, but not limited to all customer lists, identifying information, agreements, and rates; information regarding vendors, including, but not limited to all vendor lists, identifying information, agreements and rates; information regarding the skills and compensation of employees of the Company; and any other confidential, proprietary and trade secret knowledge, data or information, or information that, due to its character and nature, a reasonable person under like circumstances would treat as confidential, in whatever form or medium, produced by or for the Company.

2. **GENERAL REQUIREMENTS.** The EMPLOYEE understands and acknowledges that Confidential Information constitutes a valuable asset of the COMPANY, and may not be converted to the EMPLOYEE's own use. Accordingly, the EMPLOYEE hereby agrees that he/she shall not directly or indirectly, during the term of employment or any time thereafter, disclose any Confidential Information to any Person not expressly authorized by the COMPANY to receive such Confidential Information. The EMPLOYEE further agrees that he/she shall not directly or indirectly, during the term of employment or any time thereafter, appropriate, use or make use of any Confidential Information in connection with any business activity other than that of the COMPANY. The parties acknowledge and agree that this agreement is not intended to, and does not, alter either the COMPANY's rights or the EMPLOYEE's obligations under any state or federal statutory or common law regarding trade secrets and unfair trade practices.

3.  **REQUIRED DISCLOSURE.** In the event the EMPLOYEE is required by law or order of a court of competent jurisdiction to disclose any Confidential Information, the EMPLOYEE shall promptly notify the COMPANY of such requirement and provide the COMPANY with a copy of any court order or of any law which requires such disclosure and, if the COMPANY so elects, to the extent permitted by law, provide the COMPANY an adequate opportunity, at its own expense, to contest such law or court order or take such steps to protect the confidentiality of the Confidential Information prior to any such required disclosure by the EMPLOYEE.

4.  **COMPANY PROPERTY.** All Confidential Information and all files, records, documents, drawings, specifications, equipment, memoranda, notes, records, reports, manuals, computer disks, videotapes, drawings, blueprints and other documents (and all copies, abstracts, and summaries thereof) relating to the COMPANY, or similar items relating to the business of the COMPANY, whether prepared by the EMPLOYEE or others, and any and all copies, abstracts and summaries thereof (collectively, "Company Property") are and shall remain exclusively the property of the COMPANY. Unless authorized in writing to the contrary, the EMPLOYEE shall promptly, and without charge, deliver to the COMPANY on the termination of employment hereunder, or at any other time the COMPANY may so request, all COMPANY Property that the EMPLOYEE may then possess or have under his/her control.

5.  **INNOVATIONS OR INVENTIONS.** The EMPLOYEE shall, during the term of employment, disclose to the COMPANY, immediately after the same is made, discovered or devised, any improvement, process, development, discovery or invention (whether or not related to technical or commercial matters) that the EMPLOYEE may make, discover or devise (alone or in conjunction with others) either:

    (a)   in the course of normal duties (or of duties specifically assigned to the EMPLOYEE);

    (b)   as a result of knowledge gained during employment with the COMPANY; or

    (c)   as a result of the EMPLOYEE's use of materials, equipment or facilities of the COMPANY.

    All such items shall become the absolute property of the COMPANY without further payment and the EMPLOYEE shall satisfy all obligations in this regard by presenting the same to the COMPANY. The EMPLOYEE shall not during the term of employment (except in the performance of normal duties) or any time thereafter, disclose any such improvement, process, development, discovery, or invention to any third party and, further, shall, if an whenever required to do so by the COMPANY (at the COMPANY's sole expense), do all acts and things as the COMPANY may reasonably require for obtaining any patent or other rights therein in the name of the COMPANY or as the COMPANY may direct.

6.  **RIGHT TO SEEK INJUNCTIVE RELIEF.** EMPLOYEE acknowledges that COMPANY will suffer immediate and irreparable harm that will not be compensable by damages alone if EMPLOYEE repudiates or breaches any of the provisions hereof, or threatens or attempts to do so. COMPANY shall be entitled to obtain a temporary, preliminary and permanent injunction to prevent or restrain any actual or threatened breach of this Agreement by EMPLOYEE or any persons or entities acting in concert therewith. Such injunctive relief shall be in addition to and not in limitation of any other rights, remedies or damages available at law or in equity. Bond shall not be required to be posted as a condition for the granting of any such relief. In connection

2

with any application for injunctive relief, EMPLOYEE hereby waives the claim or defense that an adequate remedy exists at law. Nothing contained in this Section, however, shall prevent the COMPANY from establishing monetary damage suffered by a breach. The EMPLOYEE also acknowledges that the term of employment hereunder, the amount of salary, benefits and other consideration provided by the COMPANY hereunder are, in part, provided by the COMPANY to secure the EMPLOYEE's agreement to the covenants.

7. **MISCELLANEOUS.**

   7.1 This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns, specifically, but without limitation, to the EMPLOYEE after such time as he/she leaves the COMPANY's employment.

   7.2 This Agreement constitutes the entire agreement between the Parties with respect to the subject matters addressed herein. This Agreement may not be amended or modified except in writing and signed by both Parties.

   7.3 This Agreement's validity, construction, performance and effect shall be governed and construed under the laws of the State of Nevada.

   7.4 If any part of this Agreement is held to be unreasonable, arbitrary, or against public policy, such will be considered to be divisible with respect to scope, time, and geographic area, and such lesser scope, time or geographic area, or all of them, as a court of competent jurisdiction may determine to be reasonable, not arbitrary, and not against public policy, will be effective, binding, and enforceable against the EMPLOYEE.

   7.5 In the event of any dispute in connection with the terms and conditions of this Agreement, the prevailing party in such dispute shall be entitled to an award of all costs and reasonable attorneys' fees incurred.

   **IN WITNESS WHEREOF,** this Agreement has been duly executed by the Parties as of the latest date set forth below:

EMPLOYEE

COMPANY

ITS LOGISTICS, Inc., a Nevada corporation *LLC*

Glenn DeWeese
[Printed Name]

_____
Company Official

[Signature]

Signature

Date: 4-6-15

Date: 4-6-15

3

### CONFIDENTIALITY AGREEMENT

THIS CONFIDENTIALITY AGREEMENT ("Agreement"), dated _August 22_, 2016, is made by and between, ITS National, LLC. a Delaware Limited Liability Company (the "Company"), and _Josh Holtam_ (hereinafter referred to as the "EMPLOYEE").

### RECITALS

**WHEREAS,** the EMPLOYEE and the COMPANY agree and acknowledge that the EMPLOYEE has been given access to and in the future will be given continuing access to proprietary business information ("Confidential Information") belonging to the COMPANY and EMPLOYEE has a duty to maintain confidential that Confidential Information.

**WHEREAS,** the EMPLOYEE and the COMPANY agree and acknowledge that all Confidential Information pertaining to the business of the COMPANY is sensitive and absolutely confidential in nature and represents a valuable asset of the COMPANY in the nature of trade secrets and good will, which if disclosed or revealed in any manner or form would result in immediate irreparable harm and injury to the COMPANY.

**NOW THEREFORE,** in consideration of the promises contained herein, and other good and valuable consideration, it is hereby agreed between the Parties as follows:

1. **DEFINITIONS.**

   1.1 **"Confidential Information"** shall mean any and all non-public knowledge, data or information of the Company, including but not limited to the Company's strategic plans, marketing research and information, business results and financial information, ideas, processes, formulas, data, programs, know-how, improvements, discoveries, developments, designs and techniques; information regarding business plans, budgets, unpublished financial statements, licenses, prices and costs; information regarding customers, including, but not limited to all customer lists, identifying information, agreements, and rates; information regarding vendors, including, but not limited to all vendor lists, identifying information, agreements and rates; information regarding the skills and compensation of employees of the Company; and any other confidential, proprietary and trade secret knowledge, data or information, or information that, due to its character and nature, a reasonable person under like circumstances would treat as confidential, in whatever form or medium, produced by or for the Company.

2. **GENERAL REQUIREMENTS.** The EMPLOYEE understands and acknowledges that Confidential Information constitutes a valuable asset of the COMPANY, and may not be converted to the EMPLOYEE's own use. Accordingly, the EMPLOYEE hereby agrees that he/she shall not directly or indirectly, during the term of employment or any time thereafter, disclose any Confidential Information to any Person not expressly authorized by the COMPANY to receive such Confidential Information. The EMPLOYEE further agrees that he/she shall not directly or indirectly, during the term of employment or any time thereafter, appropriate, use or make use of any Confidential Information in connection with any business activity other than that of the COMPANY. The parties acknowledge and agree that this agreement is not intended to, and does not, alter either the COMPANY's rights or the EMPLOYEE's obligations under any state or federal statutory or common law regarding trade secrets and unfair trade practices.

with any application for injunctive relief, EMPLOYEE hereby waives the claim or defense that an adequate remedy exists at law. Nothing contained in this Section, however, shall prevent the COMPANY from establishing monetary damage suffered by a breach. The EMPLOYEE also acknowledges that the term of employment hereunder, the amount of salary, benefits and other consideration provided by the COMPANY hereunder are, in part, provided by the COMPANY to secure the EMPLOYEE's agreement to the covenants.

7. **MISCELLANEOUS.**

   7.1    This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns, specifically, but without limitation, to the EMPLOYEE after such time as he/she leaves the COMPANY's employment.

   7.2    This Agreement constitutes the entire agreement between the Parties with respect to the subject matters addressed herein. This Agreement may not be amended or modified except in writing and signed by both Parties.

   7.3    This Agreement's validity, construction, performance and effect shall be governed and construed under the laws of the State of Nevada.

   7.4    If any part of this Agreement is held to be unreasonable, arbitrary, or against public policy, such will be considered to be divisible with respect to scope, time, and geographic area, and such lesser scope, time or geographic area, or all of them, as a court of competent jurisdiction may determine to be reasonable, not arbitrary, and not against public policy, will be effective, binding, and enforceable against the EMPLOYEE.

   7.5    In the event of any dispute in connection with the terms and conditions of this Agreement, the prevailing party in such dispute shall be entitled to an award of all costs and reasonable attorneys' fees incurred.

   **IN WITNESS WHEREOF**, this Agreement has been duly executed by the Parties as of the latest date set forth below:

EMPLOYEE

COMPANY

ITS National, LLC, a Delaware Limited Liability company

Josh Holton
[Printed Name]

Ann Marie Jobe
Company Official

[Signature]

Signature

Date: 08/22/16

Date: 8-22-16

3